

FILED

DEC 0 2 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____ Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

In the Matter of the Complaint of    )
                                     )
ALASKA MARINE TRANSPORT & SALVAGE,   )
INC., as Owner of the M/V POLAR      )
BEAR, Official No. 974480, for       )
Exoneration from or Limitation of    )
Liability.                           )   No. A00-0157-CV (HRH)
                                     )
_____)

O R D E R

Motion to Compel Inspection

Petitioner moves pursuant to Rule 34, Federal Rules of Civil Procedure, for an order compelling respondent Richalinda Trust (herein "respondent") to make a certain gold mining dredge available for inspection.[1] The motion is opposed.[2] Petitioner has

---

[1]  Clerk's Docket No. 123.

[2]  The court has verified from counsel for respondent that its document requesting additional protection for examination of the dredge in question constituted its opposition to the motion in question. Clerk's Docket No. 128. Respondent's opposition was received one day late by the clerk, for which reason it was accompanied by respondent's motion for enlargement of time. Clerk's Docket No. 127. The court did not act upon that motion immediately because it did not understand that respondent's request
(continued...)

- 1 -

131

filed its reply. Oral argument has been requested but is not deemed necessary.

From the pleadings in connection with this motion, as well as prior activity in this case, the court understands that a key component of respondent's damage claim is a contention that a replacement dredge (the one subject to this inspection request) is comparable to the gold mining dredge that was lost when the vessel which is the subject of the instant petition was stranded. Because of claimant's contention that the lost dredge can be valued with reference to the replacement dredge, the comparability of the two dredges is patently a relevant subject for discovery. Examination of the replacement dredge by petitioner's expert is an appropriate means of effecting such discovery.

Rule 34, Federal Rules of Civil Procedure, provides in pertinent part that:

> The party upon whom the request [for inspection] is served shall serve a written response within 30 days after the service of the request. ...The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated.

---

[2](...continued)
for additional protection was intended as an opposition. The court thought the latter document was intended to be a separate motion, which misunderstanding has now been clarified as reflected above. The motion for enlargement of time is granted.

On January 26, 2004, petitioner served a request for inspection of the replacement dredge upon the other parties.[3] Having received no response, on August 22, 2005, petitioner sent a second request for inspection, covered by a letter requesting a response and advice as to the location of the dredge and when it might be examined.[4] Having still received no response by October 18, 2005, petitioner again brought the matter to respondent's attention.[5] On October 20, 2005, counsel for respondent wrote to counsel for petitioner:

> This letter responds to your letter of October 18th to Walt Mason. The dredge is at the mine site at Bear Creek. With five days' notice, we have no problem with any sort of inspection of the rep[l]acement dredge by your consultant that would not disturb it.[6]

As of October 20, 2005, it is abundantly clear that, even if respondent's lack of response to either the first or second request for inspection was not a waiver of any objection,[7] it was entirely clear as of October 20, 2005, that respondent understood and acceded to the appropriateness of an inspection of the replacement dredge by petitioner's expert. The October 20 letter contains no

---

[3]   Clerk's Docket No. 123, Ex. 1.

[4]   Id., Ex. 2.

[5]   Id., Ex. 3.

[6]   Id., Ex. 4.

[7]   The court would consider the failure to file objections in 30 days to be such a waiver.

objections and unambiguously concedes petitioner's inspection request.

The next day, October 21, 2005, counsel for respondent wrote petitioner again, this time offering both helpful materials and information as regards the accomplishment of inspection. By this letter, however, respondent for the first time sought to impose some limits on inspection, stating that: "because of the proprietary nature of the equipment the owners of the dredge said that there will be no cameras or cell phones allowed at the site."[8] It should be added at this juncture that while the foregoing exchanges were taking place, the parties had already negotiated, submitted to the court, and received court approval of a very detailed protective order with respect to confidential documents.[9] Not surprisingly, upon receipt of respondent's letter seeking to preclude cameras at the mining site, petitioner aptly complained:

> It is obviously essential that our consultant be allowed to take photographs of the dredge. We will agree that all photographs will remain subject to the confidentiality order which was previously agreed to by the parties, and signed as an order in this case by Judge Holland on January 4, 2004, and that they will be treated as "documents" for purposes of that order.[10]

Following receipt of the foregoing letter, counsel for respondent telephoned petitioner, leaving a message to the effect that

---

[8]   Clerk's Docket No. 123, Ex. 5.

[9]   Clerk's Docket No. 97.

[10]  Clerk's Docket No. 123, Ex. 6.

respondent would not allow photographs of the dredge. The instant motion followed.

The motion to compel is granted.

The court infers from what is before it and outlined above that counsel for respondent, having received without timely objection repeated requests for inspection of the substitute dredge, recognized on October 20, 2005, that inspection was entirely appropriate and so advised petitioner. The court infers that the respondent client then became involved in the matter and subsequently sought and still seeks to impose limitations upon petitioner's inspection of the substitute dredge. The court would first observe that it does seem entirely likely that there is equipment having a proprietary nature on the dredge in question. However, this is not a situation where the opposing party is a competitor of the party having proprietary material. This circumstance alone goes a long way toward alleviating concerns about inappropriate disclosure of proprietary information.

Second, and quite apart from the fact that respondent through counsel conceded that inspection should take place without any qualifying objection, the limitations that respondent seeks to impose are unreasonable. As already observed, the comparability of the lost dredge and the replacement dredge is both contested and critical to respondent's claim. If respondent means to persist in its claim that the lost dredge should be valued on the basis of the replacement dredge, respondent must afford petitioner a full

opportunity to inspect the replacement dredge without unreasonable restrictions. Discovery of information that will shed light upon the comparability of the two dredges must be made available to petitioner's expert, and that includes the opportunity to photograph the replacement dredge and its equipment for purposes of petitioner's expert's analysis and for purposes of illustrating the report and opinions that the expert will no doubt render for use by the parties and the court. It is obviously not possible to bring the substitute dredge to court. The next best means of demonstrating whether the two dredges are or are not comparable will be photographic evidence coupled with the opinions of experts.

The court deems the confidentiality agreement heretofore agreed to by the parties to be entirely adequate for purposes of protecting respondent's proprietary interests in the substitute dredge. The parties shall treat as confidential all photographs or other images of the substitute dredge taken by or for petitioner's expert, as well as any materials developed by the expert or for that expert based upon his examination of the substitute dredge.

Fact discovery closed in this case on October 31, 2005. That discovery is reopened for the sole purpose of effecting the inspection of the substitute dredge by petitioner's expert. Respondents and their respective counsel shall cooperate fully with counsel for petitioner and petitioner's expert in making arrangements at the earliest possible time for the inspection of the substitute dredge.

The motion to compel is granted. Respondent's alleged substitute dredge may be inspected by petitioner's expert, who shall be permitted to photograph the dredge in question and its equipment, with all photographs and materials derived therefrom being subject to the confidentiality agreement entered into and previously approved by the court.

DATED at Anchorage, Alaska, this 2 day of December, 2005.

H. Russel Holland
United States District Judge

A00-0157--CV (HRH)    12-1
--------------------------------------------------
✓ D. DAVIS
✓ C. EBELL
✓ M. MANNING (MANNING)