DOUGLAS R. DAVIS
Alaska Bar #7605022
KEESAL, YOUNG & LOGAN
1029 West Third Avenue, Suite 650
Anchorage, Alaska 99501-1954
Telephone: (907) 279-9696
Facsimile: (907) 279-4239

JOHN R. KEOUGH, III
WAESCHE, SHEINBAUM & O'REGAN, P.C.
111 Broadway, Suite 401
New York, New York 10006-1991
Telephone: (212) 227-3550
Facsimile: (212) 267-5767

Attorneys for ALASKA MARINE TRANSPORT
& SALVAGE, INC. as Owner of the M/V
POLAR BEAR

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

|  |  |
|---|---|
| | ) |
| | ) |
| | ) |
| | ) |
| In the Matter of | ) |
| The Complaint of ALASKA MARINE | ) |
| TRANSPORT & SALVAGE, INC., as | ) |
| Owner of the M/V POLAR BEAR, | ) |
| Official No. 974480, for Exoneration | ) |
| From or Limitation of Liability. | ) |
| | ) |
| _____ | ) |

In Admiralty

Case No.: 3:00-cv-00157-HRH

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PETITIONER'S MOTION FOR SUMMARY JUDGMENT

Petitioner, Alaska Marine Transport & Salvage, Inc., respectfully submits this reply memorandum in support of its motion for summary judgment dismissing the claims of The Richalinda Trust and Bear Tooth, LLC.

## FACTS

The relevant facts are described in Petitioner's Memorandum of Law of October 31, 2005.

## ARGUMENT

## POINT I

## SHELL/HOBLER HAVE NO
## LEGAL INTEREST IN THE DREDGE

The claimants raise several objections to the contention that the Abandoned Shipwreck Act of 1987, 43 U.S.C. §§2101 et seq. ("the ASA"), is applicable to this matter.

Bear Tooth argues that the ASA is not controlling because the wreck of the subject dredge was not in the Klamath River, but on the side of a nearby "pond." In support of its argument, Bear Tooth submits a declaration from a Mr. William Nowak: and the problem with this declaration is that it is so deficient of supporting facts that it is impossible to give it any credibility. "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addison v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000)

Mr. Nowak states that he "worked" on the dredge's recovery, but he gives no foundational information as to what this "work" involved so as to give him actual, personal knowledge. For example, he provides no description of his alleged work, the basis of his conclusion that the "dredge" or "dredge remains" was on unspecified "private property," or the

month(s) he claims to have been present.  He fails even to identify his current address, or to explain how the "dredge remains," whatever that means, of a large steel dredge came to be located "on the side of a pond" despite the dredge's prior location in the Klamath River.[1]

To the contrary, in an admission against the interest of both claimants, Richalinda Trust, the alleged owner of the dredge, summarizes the evidence on this point in its memorandum on the motion:  "Unrefuted evidence indicates the lost gold dredge was removed *from its position in the Klamath River* in California. . . ." (Memorandum, p. 4.) (Emphasis added)

Further, it is to be noted that Mr. Shell, in his affidavit on the motion, does not say anything supporting this argument but, to the contrary, actually supports Petitioner's position: "It [the dredge] was originally acquired from Patricia Trune of Salt Lake City, Utah from abandoned operations on the Klamath River in California, conducted by her husband."  Richalinda Trust Memorandum, Exh. B [Shell Aff.], ¶3.

As Richalinda Trust described the transaction, "He [Richard Shell] then approached the landowner on the Klamath River to allow heavy equipment to jerk the 20 ton steel dredge off the sandbar it lay on . . . ." (Memorandum, p. 10.)  Hence, Bear Tooth's attempt to create an issue over the dredge's location fails from Richard Shell's own admission.[2]

---

[1] Petitioner moves to strike the Nowak declaration on the ground that his telephone and address details provided by Bear Tooth's Rule 26 disclosures and witness list are inaccurate.  The telephone number and address are incorrect, and no corrected information has ever been supplied by Bear Tooth.  *See* Supplemental Affidavit of Douglas R. Davis dated February 3, 2006. Bear Tooth's failure to comply with Rule 26 bars its reliance on such a witness and the Nowak declaration, therefore, cannot be used by Bear Tooth.  *See* F.R.Civ.P. 26(e) (duty to supplement or correct)

Alternatively, if the Court should allow the admission of the Nowak declaration, Petitioner would respectfully request that the Court hold in abeyance a decision on the motion, and direct Bear Tooth to provide corrected address and telephone details for Mr. Nowak and to produce him for deposition or allow Petitioner to depose him.

[2] Even if accepted on face value, the vague allegation by Nowak that he participated in recovering "remains" of a dredge "from ground" does not create a genuine issue of material fact.  His allegations must refer only to the period after Shell removed the abandoned dredge from the Klamath River as Shell admits.  Thus, Nowak's alleged observation of "remains" already removed from the river to shore does not contradict Shell's admission that he removed the abandoned dredge from the river.

Richalinda Trust makes a different argument from Bear Tooth, though. Mr. Shell's company argues that the dredge was not actually abandoned. While it does not dispute the lack of any identifiable action by anyone following the dredge's wreck, Richalinda Trust argues that the mere lapse of time "does not necessarily establish abandonment in any situation." (*See* Memorandum, p. 7)

In the present case the dredge had always been readily available. Mr. Shell testified that the wreck was "laying half in the mud and half under water . . . ." Davis Aff., Exh. 9 [Shell Dep.], p. 70. Given that nothing had been done to recover the dredge since the late 1980's, the only valid inference is that it had been abandoned. *See Moyer v. Wrecked and Abandoned Vell,* 836 F.Supp. 1099 (D.N.J. 1993).[3]

As the Department of the Interior states in its "Abandoned Shipwreck Act Guidelines" with respect to the definition of "abandoned shipwreck":

> By not taking any action after a wreck incident either to mark and subsequently remove the wrecked vessel and its cargo or to provide legal notice of abandonment to the U.S. Coast Guard and the U.S. Army Corps of Engineers, as is required under provisions in the Rivers and Harbors Act (33 U.S.C. 409), an owner shows intent to give up title. Such shipwrecks ordinarily are treated as being abandoned <u>after the expiration of 30 days from the sinking</u>.

55 Fed. Reg. 50,116, 50,120 (1990)(emphasis added.)

Richalinda Trust also argues that the federal government did not post any public notice in accordance with 43 U.S.C. §2105(b). Examination of that provision, however, does not indicate that such a notice is a requirement for title vesting in the United States or in the transfer of such title to the State of California. Nor is there any statutory requirement, as Richalinda Trust

---

[3] The *Deep Sea Research* decision, cited by Richalinda Trust at pp. 6-7 of its memorandum, is not good law. That decision was superseded, 102 F.3d 379, later vacated in part and remanded by the Supreme Court, 523 U.S. 491 (1998), and then vacated by the Ninth Circuit on remand, 143 F.3d 1299 (1998).

appears to suggest at page 9 of its Memorandum, that there be any "affirmative adjudication of any right, title or interest of this 'shipwreck' being conducted in the State of California."

The nub of the problem is that Shell/Hobler have the burden of proof of establishing their companies' title or right to claim for this dredge. *See, e.g., K&K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003)(elements of conversion claim); *see also* F.R.Civ.P 17(a)(real party in interest).   Notwithstanding the bare allegations of cash payments to mysterious landowners, the undisputed facts establish that title to this dredge belongs to the State of California.   There is no evidence to show Richalinda Trust's ownership of the dredge. Consequently, the Court should dismiss the claims by Shell's and Hobler's companies.


## POINT II

### THIS ILLEGAL VENTURE ALSO
### PRECLUDES ANY RECOVERY

Richalinda Trust argues that this gold-mining venture by Richard Shell is different from his earlier ones because *this one* is bona fide.   Nevertheless, it is undisputed that (a) Richard Shell is still the subject of multiple Cease and Desist Orders in Arizona prohibiting solicitation of Alaskan gold mining investors such as Mr. Hobler and Bear Tooth here, and (b) nonetheless he continued to solicit such investments in this and other gold-mining ventures while in Arizona. *See, e.g.,* Davis Aff., Exhs. 1, 2 (orders); and Davis Suppl. Aff., Exh. 2 [Hobler Dep.], pp. 38, 43, 134-35 (Arizona activities).   Shell does not purge his scheme of its corruption by transferring the claim to Peter Hobler's company.[4]

---

[4] Shell's violations of Arizona's cease and desist order and securities laws are set forth in Arizona's proposed cease and desist order, a copy of which is attached as Exhibit 1 to the Davis Supplemental Affidavit.  Shell's conduct here soliciting investors like Hobler and Bear Tooth mirrors the unlawful conduct outlined in the proposed cease and desist order.  For example, Shell solicited funds for an investment in a mining operation in Alaska, and raised more than $500,00 from investors from his home in Arizona based on their visits to and communication with him in Arizona.  Shell represented he would repay the investors from

Peter Hobler, on the other hand, wants to have it both ways. Although he went into the investment knowing of Shell's larcenous past (*see* Davis Aff., Exh. 10 [Hobler Dep.], pp. 27-30), he wants to be an innocent who should not be punished by the application of hornbook legal principles (Bear Tooth Memorandum, p. 6).

Just by way of example as to the way Shell's numbers run: Peter Hobler states on the motion that "Bear Tooth subsequently [after an earlier dredge] invested approximately $1,105,000.00 to December 1, 1999, in the acquisition, refurbishment, transportation and other activities concerning the second dredge that Shell acquired, which he had refurbished by Jesse Engineering in Tacoma, Washington. Bear Tooth subsequently spent more than another $50,000.00 in additional costs pertaining to the second barge." Bear Tooth Memorandum, Exh. BT-D [Hobler Decl.], ¶2.

Shell, however, testified that he spent $75,000 to acquire the dredge. Davis Aff., Exh. 9 [Shell Dep.], p. 58. Jeffrey Gellert, the President of Jesse Engineering, claims that it cost about $128,000 to refurbish and upgrade the dredge. Richalinda Trust Memorandum, Exh. C [Gellert Aff.], ¶2.

In short, Hobler allegedly gave Shell over $1.1 million to acquire, refurbish, and transport the dredge, while the actual cost to do so was more on the order of at best no more than about $200,000. According to Hobler, he has lost more than $2.2 million investing in Shell's gold-mining schemes. *See* Davis Supp. Aff., Exh. 3; Bear Tooth Memorandum, Exh. BT-D [Hobler Decl.], ¶2.

---

proceeds of his gold mining within a short time. Shell's conduct violates A.R.S. §§ 44-1841 (offer or sale of unregistered securities), 44-1842 (transactions by unregistered dealers and salesmen), and 44-1991 (fraud in connection with the offer or sale of securities). Shell failed, among other things, to disclose the cease and desist orders, that the securities were not registered, and that he did not have valid ownership of the dredge in question.

As the New York Court of Appeals held in *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y. 465, 199 N.Y.S.2d 483 (1960):

> "It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show forth his illegal purpose." (*Stone v. Freeman*, 298 N.Y. 268, 271 . . . ). The money plaintiff sues for was the fruit of an admitted crime and "no court should be required to serve as paymaster of the wages of crime." [*Id.*]

> \* \* \* \*

> That public policy is . . . described in *Riggs v. Palmer* (115 N.Y. 506, 511-512): "No one shall be permitted to profit by his own fraud. . . or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes." (Citation omitted).

The same policy and reasoning applies here with equal force. Although the charter of the Polar Bear by Shell was not an intrinsically illegal contract, the charter was an integral and necessary part of Shell's unlawful scheme of soliciting investments by Hobler and Bear Tooth in his Alaska gold mining escapade. The court in *McConnell* recognized that "the rule fails of its purpose unless it covers a case like the one at bar . . . . Here, as in *Stone v. Freeman* . . . the money sued for was "the fruit of a crime." The court there further reasoned:

> We are not working here with narrow questions of technical law. We are applying fundamental concepts of morality and fair dealing not to be weakened by exceptions.

Bear Tooth objects to the application of "broad legal principles." Memorandum at p. 5. That objection notwithstanding, the core truth remains: this Court should not lend its weight and authority to enforcing an intrinsic element of a gold-mining fraud. The Court should refuse to enforce the Shell/Hobler claims.

## CONCLUSION

The Plaintiff's motion for summary judgment should be granted in all respects. The claims of The Richalinda Trust and Bear Tooth, LLC should be dismissed as a matter of law.

DATED at Anchorage, Alaska, this 3rd day of February, 2006.


S/DOUGLAS R. DAVIS
DOUGLAS R. DAVIS
Alaska Bar No. 7605022
KEESAL, YOUNG & LOGAN
1029 W. Third Avenue, Suite 650
Anchorage, Alaska 99501
doug.davis@kyl.com
Attorneys for Alaska Marine Transport &
Salvage, Inc.

CERTIFICATE OF SERVICE:

I HEREBY CERTIFY THAT I CAUSED
TO BE SERVED A TRUE AND
CORRECT COPY OF THE FOREGOING
THIS 3rd OF FEBRUARY, 2006 to:

Via Mail

Mark C. Manning, Esq.
Mark C. Manning, P.C.
431 West 7th Avenue, Suite 204
Anchorage, Alaska 99501

Mark S. Bledsoe
Law Offices of Mark S. Bledsoe
2525 Blueberry Road, Suite 202
Anchorage, Alaska 99503

J.J. Sandlin
Sandlin Law Firm
P.O. Box 1005
Zillah, WA 98953


s/DOUGLAS R. DAVIS